UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

MAY MOUA,                        )   No. ED CV 07-00945-VBK
                                 )
              Plaintiff,         )   MEMORANDUM OPINION
                                 )   AND ORDER
       v.                        )
                                 )   (Social Security Case)
MICHAEL J. ASTRUE,               )
Commissioner of Social           )
Security,                        )
                                 )
              Defendant.         )
_____  )

       This matter is before the Court for review of the decision by the
Commissioner of Social Security denying Plaintiff's application for
disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have
consented that the case may be handled by the Magistrate Judge.  The
action arises under 42 U.S.C. §405(g), which authorizes the Court to
enter judgment upon the pleadings and transcript of the record before
the Commissioner.  The parties have filed the Joint Stipulation
("JS"), and the Commissioner has filed the certified Administrative
Record ("AR").  After reviewing the matter, the Court concludes that
the decision of the Commissioner must be affirmed.

       This Memorandum Opinion will constitute the Court's findings of

fact and conclusions of law.

Plaintiff presents the following issues:

1.   Whether the Administrative Law Judge ("ALJ") denied Plaintiff her right to counsel;

2.   Whether the ALJ properly evaluated the consulting physician's opinion;

3.   Whether the ALJ properly evaluated lay witness testimony; and

4.   Whether the ALJ posed a complete hypothetical question to the vocational expert ("VE").

**I**

**PLAINTIFF WAS ADVISED OF HER RIGHT TO HAVE A**

**REPRESENTATIVE ASSIST HER, AND UNDERSTOOD THAT RIGHT**

**A.   Applicable Law**.

Social Security Regulations ("SSR") establish that a claimant has a right to appoint a representative.  That representative need not be an attorney. (See 20 C.F.R. §§404.1700, 404.1703, 404.1705.)  The Commissioner's obligation to notify of a claimant of her right to appoint a representative, is also set forth in the regulations.  20 C.F.R. §404.1706 specifically provides that if the Commissioner makes a determination  subject to the administrative review process, and does not grant all benefits or other relief requested, or adversely affects any entitlement to benefits that has been previously established, the notice of such decision will include information about options for obtaining an attorney to represent the claimant in dealings with the Commissioner. (Id.) The Commissioner will recognize someone as a representative for a claimant if the claimant signs a

written notice appointing the individual, and the representative signs the notice agreeing to be the representative, if the person is not an attorney.  The notice must then be filed at a Social Security office, or with an ALJ if a hearing has been requested. (20 C.F.R. §404.1707.)

The authority of a representative includes obtaining information about the claim; submitting evidence; making statements about facts and law; and making any request or giving notice about the proceedings. (20 C.F.R. §404.1710.)  In turn, the Commissioner will send the representative a notice and copy of any administrative action, determination or decision; and, requests for information or evidence. (20 C.F.R. §404.1715.)

There is no constitutional guarantee of the right to counsel in Social Security cases.  The right to counsel is provided by statute. (See 42 U.S.C. §406.)(See also Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985)("Lack of counsel does not affect the validity of the hearing unless the plaintiff can demonstrate prejudice or unfairness in the administrative proceedings." )(citing Vidal v. Harris, 637 F.2d 710, at 713 (9th Cir. 1981.)

**B.   Analysis.**

Two hearings were held in this matter.  The first occurred before the ALJ on September 14, 2005. (AR 382-389.) Plaintiff appeared along with an interpreter, a medical expert ("ME"), a vocational expert ("VE"), and two witnesses.  One of these witnesses was her husband, Dang Vang.  After taking testimony from the ME, who opined that Plaintiff's medically determinable impairments were largely psychological in nature (AR 386-388), the ALJ determined that he needed a psychological ME and adjourned the hearing to another date.

(AR 387-388.)   The second hearing occurred on December 5, 2005 (AR 390-404), at which time Plaintiff appeared, as well as an additional ME who testified as to mental impairment issues, a VE, and an interpreter.   At this hearing, the ALJ engaged in a brief colloquy regarding whether Plaintiff was going to be represented. (AR 392-394.) It is Plaintiff's contention that the ALJ failed in his duty to advise Plaintiff of her right to have a representative at the hearing, because she was illiterate (which is not disputed by the parties), and therefore did not understand that she had such a right.   Plaintiff acknowledges that the record contains numerous documents sent by the Social Security Administration ("SSA") to her which specifically advise her of her right to have a representative, but her counsel argues that, "Although the Plaintiff may have received this information, the important point is that she is illiterate and clearly did not understand the meaning or significance of this information." (JS at 11.)

Plaintiff's husband, Mr. Vang, served as her representative payee to receive her Social Security benefits. (AR 115-119.)   This election occurred on October 28, 1991. (AR 118.)   Thereafter, Mr. Vang signed and completed numerous required documents on behalf of Plaintiff.   For example, a "Statement of Claimant or Other Person" dated March 30, 1993 was signed by Mr. Vang on behalf of Plaintiff. (AR 141-142.) There was also a "Statement of Income" prepared and signed by Mr. Vang on behalf of Plaintiff on May 22, 2001, which indicates, in part, that,

> "I am providing this statement on behalf of MAY MOUA to
> determine MAY's eligibility for Supplemental Security Income
> and any federally administered State supplementation under

4

title XVI of the Social Security Act, for benefits under the
other programs administered by the Social Security
Administration, ..."
(AR 143.)


The SSA's Notice of Disability Cessation of February 20, 2004 was
mailed to Plaintiff's representative. (AR 26-29.)  A Request for
Reconsideration - Disability Cessation was signed by Plaintiff and
submitted to the SSA. (AR 30-31.)  On March 5, 2004, Plaintiff and her
representative signed a Statement of Claimant or Other Person
indicating an election to have benefits continue pending the outcome
of her appeal regarding the intended cessation of benefits. (AR 32-
33.)  Plaintiff received a Notice of Disability Hearing dated May 12,
2004, along with a reminder (AR 34-36), and her representative was, on
the same date, mailed a Notice of Disability Hearing. (AR 37.)  The
Disability Hearing Officer's Decision was mailed to Plaintiff's
representative on June 30, 2004. (AR 48-50.)  Within that Notice is a
section indicating that Plaintiff had the right to have the assistance
of "a friend, lawyer, or someone else" at the hearing before the ALJ.
(AR 49.)  Plaintiff was also advised that there are groups that can
help her find a lawyer or give her free legal services if she
qualified, and that there are also lawyers who do not charge unless
she wins her appeal.  It was indicated that her local Social Security
office has a list of groups that can help her at her hearing. (Id.)
The Request for Hearing by Administrative Law Judge was prepared by
Plaintiff's representative on her behalf. (AR 51-52.)  On August 10,
2004, the ALJ mailed Plaintiff an acknowledgment that her request for
a hearing before an ALJ had been received.  This notice was mailed to

Plaintiff at the same address as the previous notices which had been sent to both her and her husband as her representative. (AR 54-56.) Included within that letter was a page entitled "Important Notice" which again advised Plaintiff that she could have a private attorney represent her, and, in addition, indicated that if she qualified for free legal representation, she could contact any of six named organizations, whose addresses and telephone numbers were also provided to her. It was also indicated that she could have a private non-attorney representative assist her. (AR 56.)

The ALJ mailed Plaintiff a Notice of Hearing on August 23, 2005, which again advised her of her right to obtain a representative to assist her at the hearing. (AR 65-68.)

The Court's review of the pertinent record leaves it with no doubt that the SSA complied with its statutory and regulatory obligation to advise Plaintiff of her right to obtain a lawyer or non-lawyer representative at the hearing. Further, these notices were received by Plaintiff's husband, her representative, who on occasion responded appropriately, indicating that Plaintiff would attend the hearing.

It is unclear to the Court whether Plaintiff is contending in her first issue that she did not understand that she had a right to a representative, largely based upon her illiteracy, or, in the alternative, if she is contending that the ALJ improperly denied her request for a continuance at the second hearing in order for her to obtain a representative. As to the former, if that is the issue at hand, the Court finds that Plaintiff was adequately advised of her right to counsel both in the underlying notices sent to her by SSA, and also specifically by the ALJ at the hearing. (See AR at 392-393.)

If, on the other hand, Plaintiff is contending that she understood her right to have a representative, but that the ALJ improperly refused her request to continue the second hearing in order for her to obtain a representative, the Court also finds no merit in that argument. Plaintiff had adequate notice from the SSA of her right to obtain a representative if she so chose, including specific notification of various legal aid agencies which might represent her at no cost if she qualified.  Moreover, the first hearing was put over, and the record kept open so that another medical expert could be appointed and testify, and the second hearing occurred almost three months later. Moreover, the issue is not one which turns on Plaintiff's illiteracy. Clearly, the documentation which was sent to her by SSA, usually addressed to her representative, adequately explained her right to have a representative.  Moreover, at the hearing, it is clear that Plaintiff understood that she could have a representative, but did not unequivocally state that she wanted a representative at the hearing to assist her. ("I think that because I'm illiterate, if I have someone representing me will be better [sic].  However, I do not know." AR 393.)

Finally, the Court finds that the absence of a representative at the hearing did not prejudice Plaintiff, because the ALJ assiduously pursued his duty to develop the record and protect Plaintiff's interests.  Thus, after the first hearing, the ALJ ordered additional treatment records which were received. (AR 341-378.) The ALJ sent the ME medical treatment records, and also asked for a response to an interrogatory regarding any medically determinable impairments demonstrated by these records. (AR 17, 80-90, 341-381.)  The physician's response was sent by the ALJ to both Plaintiff and her

representative, and they were advised that the record could be further developed regarding this response by either submitting a written response, additional evidence, an additional interrogatory, or asking for an additional hearing. (AR 80-90.)  Thus, the ALJ discharged his obligation to diligently explore all relevant facts. (See Key, 754, F.2d at 1551 (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978), citing Vidal v. Harris, 637 F.2d at 713.)

For the foregoing reasons, the Court determines that Plaintiff's first issue has no merit.


**II**

**THE ALJ PROPERLY EVALUATED THE 1991 CONSULTING PHYSICIAN'S**

**OPINION REGARDING PLAINTIFF'S MENTAL IMPAIRMENT**

Plaintiff asserts that in his Decision, the ALJ failed to properly evaluate the 1991 Psychiatric Evaluative Report of Dr. DeSilva, who performed a consultative examination on behalf of the State of California Department of Social Services. (AR 267-270.)  The Court disagrees, and for the reasons to be set forth, finds that the ALJ properly discharged his obligation to consider this prior opinion.


**A.    Applicable Law Regarding Continuing Disability Review**.

By regulation, the Commissioner is entitled to periodically evaluate whether a claimant's impairments remain of sufficient severity to cause disability.  This evaluation is called a Continuing Disability Review ("CDR") (20 C.F.R. §416.989(a).)  In conducting the CDR, the Commissioner must review applicable medical evidence and history for at least the preceding 12 months, and then, if the review demonstrates that payment should be stopped, the claimant is notified

1   in writing and given an opportunity to appeal. (<u>Id</u>.)

2        The regulations also specify how the Commissioner will determine

3   whether disability continues or ends. (<u>See</u>, generally, 20 C.F.R.

4   §416.994.)   In order to determine whether medical improvement has

5   occurred, the regulation requires the Commissioner to,

6        "[C]ompare   the   current   medical   severity   of   that

7        impairment(s) which was present at the time of the most

8        favorable medical decision that you were disabled or

9        continue to be disabled to the medical severity of that

10       impairment(s) at that time.   <u>If medical improvement has</u>

11       <u>occurred, we will compare your current functional capacity</u>

12       <u>to do basic work activities (</u><u>*i.e.*</u><u>, your residual functional</u>

13       <u>capacity) based on the previously existing impairments with</u>

14       <u>your   prior   residual   functional   capacity   in   order   to</u>

15       <u>determine whether the medical improvement is related to your</u>

16       <u>ability to do work.</u>"

17  (20 C.F.R. §416.994(b)(1)(vii) (emphasis added).)

18

19       The regulation further provides that,

20       "If there is a decrease in medical severity as shown by

21       the symptoms, signs and laboratory findings, we must then

22       determine if it is related to your ability to do work."

23  (20 C.F.R. §416.994(b)(2)(ii).)

24       Significantly, the regulation further requires that,

25       "[w]e will assess your residual functional capacity ...

26       based on the current severity of the impairment(s) which was

27       present at your last favorable medical decision."

28

9

1  In cases in which the previous impairment met or equaled a

2  Listing, and in which, therefore, an assessment of a claimant's

3  residual functional capacity would not have been made, the regulations

4  provide that medical improvement is considered to be related to

5  ability to work. (See 20 C.F.R. §416.994(b)(2)(A).)

6

7  **B.  Analysis**.

8  In this case, it was acknowledged that as of 1991, and in fact,

9  based on Dr. DeSilva's opinion, Plaintiff was found to meet the

10  Listing for affective disorder under 20 C.F.R. Part 404, subpart P,

11  Appendix 1, Section 12.04. (See AR 17, Finding 2.)  Thus, without any

12  further discussion being necessary, it is clear that Dr. DeSilva's

13  opinion was considered, because Plaintiff had been found to meet a

14  Listing. As noted in the preceding subsection, since Plaintiff met a

15  Listing at the time of her 1991 CDR, the question which needed to be

16  addressed was whether, as of the time of the CDR, Plaintiff continued

17  to have severe impairments, whether they met or equaled the severity

18  of a Listing impairment, and whether medical improvement had occurred

19  as of the time of the CDR. (See AR at 17-19.)  Since Plaintiff does

20  not challenge the adequacy of the ALJ's evaluation of the evidence as

21  to mental impairment following the 1991 Comparison Point Decision

22  ("CPD"), the Court need not further address that issue.

23  Plaintiff's second issue, therefore, has no merit.

24

25  **III**

26  **THE ALJ PROPERLY EVALUATED LAY WITNESS TESTIMONY**

27  Plaintiff contends that the ALJ failed to properly evaluate the

28  testimony of her daughter, who indicated that she napped when she

10

became tired, was very forgetful, and because of her illiteracy, is unable to pay bills, count change, or use a checkbook. Plaintiff also refers to a second activity report completed by a friend who indicated that she had difficulty handling stress, changes in routine, and that she was unable to care for herself and was in constant need of help. (JS at 15-16, citing AR 20-22.)

While Plaintiff contends that the ALJ ran afoul of law which requires that he give reasons which are pertinent to each witness whose testimony he rejects (see JS at 16, citing cases), in fact, the ALJ did provide a thorough and extensive discussion of each aspect of the lay witness's testimony and then provided specific reasons for rejecting that testimony. (See AR at 20.)   In particular, the ALJ noted that at the second hearing, the psychiatric ME, Dr. Malancharuvil, was present telephonically and provided specific testimony as to the fact that Plaintiff has no restrictions in her activities of daily living ("ADL"), mild to moderate difficulties in maintain social functioning, mild to moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decomposition of an extended duration. (See AR at 20, and testimony at AR 396-399.)   The ALJ found that the ME's opinion was based on its reliance upon the entire record, which included this lay witness testimony.   Indeed, the ALJ may discount lay witness testimony if it conflicts with medical evidence.   See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601-602 (9th Cir. 1988).   Plaintiff's contention that the ALJ did not specifically or literally state that he rejected law witness testimony because it was not supported by the medical evidence, and instead relied upon the opinion of the testifying ME, is primarily a semantic argument.   The

context of the Decision clearly indicates that the ALJ was performing the appropriate analysis, and relied upon substantial and competent evidence to discount this lay testimony.

For this reason, Plaintiff's third issue has no merit.


**IV**

**THE ALJ POSED A COMPLETE HYPOTHETICAL QUESTION**

**TO THE VOCATIONAL EXPERT**

At the second hearing, testimony was taken from a VE. (AR 402-403.)  Plaintiff asserts that error occurred because the hypothetical question posed to the VE (AR 402) failed to include factors which related to Plaintiff's difficulty completing tasks and concentration and memory problems, in addition to physical factors, such as her lifting limitations.

In his Decision, the ALJ found that Plaintiff had impairments considered to be severe.  In particular, he concluded that her affective disorder no longer meets the criteria of a Listing, and, agreeing with the clinical diagnoses of the CE, found that she has a depressive disorder, NOS, and a cognitive disorder, NOS, as of January 1, 2004. (AR 19.)  These limitations were included in the hypothetical question. (AR 402.)  In particular, the hypothetical indicated an individual with a depressive disorder and a cognitive disorder resulting in a limitation to three to five step tasks which would be habituated, no rapid assembly or requirements for rapid work, and a person who is functionally illiterate in English. (AR 402.)  In response, the VE identified jobs which Plaintiff would be able to perform in the national economy, and Plaintiff does not challenge the appropriateness of those jobs; rather, it is the inadequacy of the

hypothetical upon which Plaintiff focuses.

The Court disagrees with Plaintiff's contention, because the hypothetical in fact incorporated all of the limitations which were found based on substantial evidence in the record.   A hypothetical question need not include other limitations set forth in the medical evidence which are not found to be severe impairments.   See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).   Here, the ALJ relied upon the opinions of the two MEs, Drs. Nafoosi and Malancharuvil, in assessing Plaintiff's residual functional capacity ("RFC").   Further, the ALJ included in the RFC the subjective allegations which were found to be credible. (See AR at 18-21.) For these reasons, the Court finds that the hypothetical was adequate under controlling legal precedent, and there is no merit in Plaintiff's fourth issue.

For the foregoing reasons, the decision of the ALJ will be affirmed.   The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED**.


DATED:  May 27, 2008                    /s/
                                      VICTOR B. KENTON
                                      UNITED STATES MAGISTRATE JUDGE